Good morning, Your Honors. My name is Karen Bucher, and I represent Nathaniel Williams. And with the Court's permission, I'd like to reserve two minutes for rebuttal. And this is a habeas tolling case. One of the issues raised in this appeal is whether or not the notice of appeal and the request for a certificate of probable cause received by the Court on July 24, 1996 is considered a properly filed post-conviction relief, thus triggering the one-year statute of limitations. And the answer is yes. In this case, Mr. Williams was sentenced in 1982. He did not file a notice of appeal, and he had 60 days in which to do so. That time passed, and after that time passed, the Court lost jurisdiction and had no power to grant relief. So at this point, the direct appeals process was over. Fourteen years later, Mr. Williams decided to challenge his conviction. And the only way he could seek relief is under the theory of constructive filing, which in California is a recognized post-conviction procedure. And that's what he did. He filed his notice of appeal and request for probable cause under the constructive filing theory. Now, wait a minute. He filed a motion to withdraw his plea with the Superior Court, didn't he? Yes, he did. He did. And that was denied? In 1995. And that was denied? Correct. Now, when he files his notice of appeal, what is he appealing from? The denial of the motion to withdraw the guilty plea, or is he trying to appeal from the original conviction? It was from the original conviction. What happened was in 1996, he was getting ready for a parole hearing. And while he was getting ready for that parole hearing, he saw his C file for the first time. And inside the C central file, there was a report from the CYA right before he pled guilty, which indicated to him he had some mental problems of subnormal intelligence. And based on that, this new evidence that he came across, he wanted to withdraw his plea, the original conviction. Counsel, if we were to say, OK, his direct appeal procedures ended in April 1977 when they denied his writ of mandate. Just accept that for the moment. OK. OK. And how long was it before he filed his habeas? He filed his first – the very first thing that he filed was July 1996. The first habeas petition he filed was March 1997, March 18, 1997. And then his second habeas was filed. Then after that, his next – Counsel, I thought – I thought the first habeas was filed December 18, 1997. No. What happened – I have a timeline here. I have a December date also in my little chart. OK. On my timeline, on November 26, 1996, which the superior court denied his request for certificate of probable cause under the constructive filing theory. And that's at E.R. 51-55. But I was going to give him, for purposes of just our discussion, until April 1997 when his mandamus was denied. To call that the period of when he was trying to deal with a direct appeal. So I wanted to count time from then. And frankly, I don't get enough – I don't get enough tolling. But his first habeas, I think, was filed on December 18, 1997. Is that not right? His first habeas petition, he called it a writ of mandate. But when you review the writ of mandate – You want to call – I'm calling that part of his direct appeal. But you're trying to call that part of the habeas. Oh, I see. I misunderstood you. See, I considered that as part of the post-conviction process. Because inside that writ of mandate, he also included some – he didn't call it a writ of habeas corpus, but he was challenging his plea. He said that his attorney was ineffective because he said you will get the death penalty if you don't plead guilty. So in my mind, that writ of mandate was a collateral proceeding. Wasn't that – wasn't he asking the Supreme Court to issue him a certificate of probable cause to appeal? The Supreme Court – In that petition for writ of mandate. Wasn't he seeking permission to appeal in that? When I reviewed – and one of the – when I reviewed the writ of mandate, part of it said yes, that's what he was trying to do. And then when you review it, he attached some other documents that said he was also – it was almost like a writ of mandate and a writ of habeas corpus together. I read that as explaining why the certificate of probable cause should be granted. These are the issues I want to raise, and that's why I need a certificate of probable cause. Correct. And the mistake that I made when I was preparing the excerpts of record, I tried to make it compact, so I only included, like, the date that it was filed to court. It was in just a few pages, just thinking that that's all I needed to show. But as I was preparing for this, I realized that I should have included the entire petition, so the court can review the entire petition for each case. And it's in the Respondent's Motion to Dismiss that's in the court record. And it is – I believe it's Exhibit J in the Respondent's Motion to Dismiss, which has the entire writ of mandate. And when I reviewed that carefully, he does request the issuance of the certificate of probable cause. And he goes on, because he included some other documents which stated he was challenging his plea at the same time. And in California, it doesn't matter what someone labels it. It's what's inside of it is what counts. So my argument is, is that after the court denied his request for a certificate of probable cause, which at that time was under the theory of constructive filing, and it was past the direct appeals process anyway, then he moved on. He moved on and followed the petition of writ of mandate, which was also, in my mind, a petition for writ of habeas corpus. And then he went down the line until he traveled to the courts, until finally he reached the California Supreme Court, which was denied in June 28, 2000, and became final a month later. And that's what he's entitled to do under Cary v. Southolt. The whole point, I believe, in that case is you get one full shot from beginning to end. It doesn't matter how you do it, as long as California law provides that you can do it. I want to make sure I understand your position. Your position is that his ad vitam didn't start to run until June 28, 2000? A month after that, when he became final, correct. And there's a time period in the beginning. There's about a month in the beginning that wasn't told because I forgot the exact date, but it's in my brief. And there's another issue in this case that he won. What about the time between November 26, 1996, which is when the Superior Court denied his certificate of probable cause, and March 14, 1997, when he filed his petition for mandate, and you say a petition for habeas corpus? Together. Together with the appellate court. What about those four or five months? Those were told as well. And my point is when he filed that notice of appeal and request for certificate for probable cause in July 1996, that was past the direct appeals process. That was over. So the only thing that's left is collateral review or post-conviction review. And in California, you are allowed to do that under constructive filing theory, which is considered is recognized as a state post-conviction procedure. That's my hope. I understand what you're talking. You're telling me that is is noticed his motion to withdraw the guilty plea wasn't post-conviction relief. It wasn't a collateral attack. That that happened in 1995 prior to the. I understand. But your point is that that that that was a post-conviction relief proceeding. When he files his petition for mandate. The essence is asking for a review of the denial of that motion, as I understood it. And the motion to withdraw. I don't remember it that way. The way that I remember it, he did. He did file a request to withdraw. And this was, I believe, in 1995. Yes, that was in 1995. OK. And in May of 1995, May 4th, 1995. Then what happened was a year later, when he found out what happened, when he saw his central file and he received this new evidence. That's when he filed the notice of appeal. I see. I'm I'm still halfway hung up on the idea that. That the that the notice of appeal and request for a statement of probable cause. Attacked the original conviction and not the motion to withdraw the guilty plea. Right there. I'm trying to remember. I read it last night and it attacked his guilty plea. And that's just from my memory. Thank you. You're welcome. All right. Counsel will give you one minute for rebuttal. Thank you. Good morning, Your Honors. Deputy Attorney General Richard Green. Help me out here, Mr. Green. I'm a stranger wandering in the wilderness of California procedure. OK. Let's talk about what happened in this case. And I'll try and make some clarifications. As as to your the thing you were hung up on, Judge Hanson, I understood that the the 1996 applications for a certificate of probable cause. Respondents reading of those is they're an attempt to reopen their appeal. They're saying I'm entitled to a file to file for a late appeal under this doctrine of constructive notice or I have a good excuse for not filing my appeal. Therefore, you should now let me file an appeal. It was really not an attempt to get a review of the motion, the denial of the motion to withdraw the guilty plea. That's respondents reading of it. Correct. That that Williams was seeking to, for the first time, start his appeal. And it's important to look at when he files with that application for certificate of probable cause. He's seeking appointment of counsel for appeal, something that you don't get in a collateral attack for state habeas corpus. He's saying now I want to go with my appeal. I missed my chance to do it. I have a good excuse. I should be allowed to file my first appeal as of right and end up withdrawing my guilty plea, whatever result that has. Turning to the writ of mandate. You look at the writ of mandate. He is saying Williams is saying, hey, court of appeal. The trial court did not consider my reasons for being late on filing a notice of appeal. That's the basis for the writ of mandate. And respondent strongly disagrees with the characterization of that writ of mandate as a as a collateral attack. And if I could, I'd like to just point out to the court in the district court's resolution of this case. That's excerpts of record at page 140. The district court resolved the factual issue of what that document was in respondent appellees favor. The district court said that is a writ of mandate. It is not a petition for writ of habeas corpus. I don't know whether that's law or fact that he's deciding there. And obviously, your Honor, respondent's point would be respondent's position is it's an issue of fact based on based on the record. And if you read what the district court is setting forth, the district court's conclusion there is based on the facts produced by respondent appellee in the motion. It doesn't make any difference if I think that was really a ruling as a matter of law. It does not make a difference if if if your Honor interprets it as a question of law, then you are entitled to de novo review. I understand that your Honor. But I guess that I was looking at this, giving the benefit of the doubt in one to Mr. Williams, that we would consider his direct appeal process as ending with the denial of the mandamus for it. And I'd like to address that. And obviously, you know, our position is is otherwise that the that there was no tolling consequences from these earlier filings, the application and the writ of mandate. But assuming that there was, it is respondent's position that that for 2097, if that's that would be the conclusion for lack of a better word, a round overview. Or it could be or you could call it the the end of his appeal process. And then we start in with the habeas process. And how long between April 1997 and the first filing of a habeas petition? And that period is two hundred and forty two days to answer that question. And the respondents position here is that it's the twelve eighteen ninety seven date is the date that the first state court habeas petition is filed in the trial court. And just for purposes of our discussion, if we're talking about this in terms of gap tolling, which it appears that that Williams is advocating that he gets gap tolling from the first thing he files in superior court on up through the final state Supreme Court denial of his of his last habeas petition. Looking at this writ of mandate and Carrie versus Saffold, that writ of mandate had specific time period limitations on it on which it was final. Unlike the California state habeas proceedings, which the entire discussion in Carrie versus Saffold is distinguishing between state proceedings with set time limits and California original state habeas, which doesn't have set time limits and grants original jurisdiction in all courts. In that circumstance, yes, it's now it's now established gap tolling all the way through from first state habeas filing through last. As long as there's one issue there to to to answer the absolutely direct question your honor was asking before twenty ninety seven is the date that, you know, that we we say direct review is concluded or one round of even if we call it collateral review is concluded. The petition is still untimely. And Judge Hansen, the final the final date of his of Williams is state habeas proceedings is seven twenty eight two thousand. That's 30 days after the denial of of his last state habeas proceedings to have been timely. He would have had to have filed his federal petition by November 21st, 2000. And we don't have his first petition until February 16th, 2001. So under your theory, you've got the two hundred and forty two days you spoke about. Correct, your honor. That's the period for twenty ninety seven. That would be twelve eighteen to twelve eighteen ninety seven, the filing of the first state habeas petition in the trial court. And you say you've got to what? Two hundred and thirty three days. I had two hundred forty two days in that period. Right. What's your next block of time? My next block of time would be the the remaining one hundred and thirteen days using seven twenty eight two thousand as the finality of his state habeas proceedings. You have one hundred and thirty days into the future. That would be eleven twenty one two thousand two hundred and thirteen days. One hundred and one hundred and thirteen days. And then it was beyond that. And then it was beyond that, that we get the first habeas petition. And that's why we presented these arguments in the alternative. It's one of those issues where you don't even necessarily have to decide whether or not what he filed. In the Superior Court in nineteen ninety six constitutes collateral relief or applications for collateral relief or part of the direct appeal. You got that seven twenty date where it's either one. It's either the end of direct review or it's the end of one round of review based on California's procedural rules for writs of mandate. And unless the court has further questions, I'd be happy to submit on the briefs. Thank you, counsel. Thank you. One minute for rebuttal. Nothing further. Thank you. The case just argued is submitted for decision by the court. The next case on calendar for argument is United States versus stays and Wayne.
judges: Fletcher, Hansen, Rawlinson